IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BMO HARRIS BANK N.A., a national banking association,<br><br>       Plaintiff,<br><br>  vs.<br><br>A & M TRUCKING, INC., a Hawaii corporation, and MARK D. KUHN, an individual resident and citizen of Hawaii,<br><br>       Defendants. | CIVIL NO. 17-00598 HG-KJM<br><br>FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART MOTION FOR DEFAULT JUDGMENT |

FINDINGS AND RECOMMENDATION TO GRANT IN PART
AND DENY IN PART MOTION FOR DEFAULT JUDGMENT

Plaintiff BMO Harris Bank N.A., a national banking association ("BMO") filed a Motion for Default Judgment against Defendants A & M Trucking, Inc. ("Borrower") and Mark D. Kuhn ("Guarantor") (together with Borrower, the "Defendants") on May 11, 2018 ("Motion"). *See* ECF No. 21. The Court held a hearing on this Motion on June 21, 2018, at 10:00 A.M. Christopher J. Muzzi,

Esq., appeared on behalf of BMO.  Defendants did not appear.

The Court ordered supplemental briefing from BMO regarding awarding attorneys' fees to mainland counsel, notwithstanding the absence of a pro hac vice application to appear in this Court.  BMO submitted its Supplemental Memorandum in Support of Plaintiff's Motion for Default Judgment on June 27, 2018 ("Supplemental Memorandum").  *See* ECF No. 26.

## BACKGROUND

This Motion arises from the December 18, 2017 Verified Complaint ("Complaint") filed by BMO against Defendants.  *See* ECF No. 1.  The Complaint alleges that BMO and Borrower entered into a Loan and Security Agreement on April 22, 2016 ("April 22, 2016 Agreement"), in which BMO agreed to finance Borrower's purchase of the equipment described in the April 22, 2016 Agreement for use in Borrower's business.  *Id*. at 2-3, ¶ 9.  Borrower agreed to pay BMO $847,890.96, including interest, pursuant to the terms and

conditions of the April 22, 2016 Agreement. *Id.; see also* ECF No. 1-2 at 2-7 (April 22, 2016 Agreement).

On May 9, 2016, BMO and Borrower entered into a second agreement ("May 9, 2016 Agreement"), in which BMO agreed to finance Borrower's purchase of additional equipment for Borrower's business.  Borrower agreed to pay BMO $282,221.52, including interest, pursuant to the terms of the May 9, 2016 Agreement. *Id.* at 3, ¶ 10; *see also* ECF No. 1-3 at 2-6 (May 9, 2016 Agreement).

BMO and Borrower agreed that BMO had a first-priority security interest in the equipment described in the April 22, 2016 Agreement and May 9, 2016 Agreement (collectively, "Loan Agreements") and that such equipment would serve as the collateral.  BMO perfected its security interest in the collateral, which consists of four (4) 2017 Volvo Super Dump Trucks ("Collateral"), by recording its lien on the Certificates of Title for the Collateral. *Id.* at 4, ¶ 11; *see also* ECF No. 1-4 (Certificates of Title for the Collateral).

3

The Complaint alleges that the Guarantor guaranteed the Borrower's performance under the Loan Agreements pursuant to an April 22, 2016 guaranty agreement and an May 9, 2016 guaranty agreement (collectively, the "Guaranty Agreements"). ECF No. 1 at 4, ¶ 13; *see also* ECF No. 1-5. The Complaint alleges that Borrower failed to make the October 1, 2017 payment due under the April 22, 2016 Agreement and the November 9, 2017 payment under the May 9, 2016 Agreement. "Under the terms and conditions of the Agreement, failure to make a payment when due is considered an event of default." ECF No. 1 at 4, ¶ 14.

The Complaint thus alleges that Borrower is in default under the Loan Agreements for failure to pay the amount due under the Loan Agreements, and that such defaults are continuing. *Id*. at 5, ¶ 15. The Complaint also alleges that the Guarantor is in default under the Guaranty Agreements based on the Borrower's failure to pay the amounts due under the Loan Agreements. *Id*., ¶ 16.

The Complaint contends that pursuant to the Loan Agreements' terms, the entire amounts due under the Loan Agreements have been accelerated. *Id.*, ¶ 17.  The Complaint asserts that as of the respective dates of default, the principal due and owing after acceleration totals not less than $751,134.56. *Id.*  The Complaint also alleges that Borrower is obligated to pay:  (1) interest on all unpaid amounts at the default interest rate of eighteen percent (18%) per annum or the maximum rate not prohibited by applicable law; (2) late charges; (3) other fees under the Loan Agreements; (4) all expenses of retaking, holding, preparing for sale, and selling the Collateral; and (5) attorneys' fees and costs incurred by BMO in the enforcement of the foregoing penalties. *Id.* at 5-6, ¶¶ 18-21.  The Complaint contends that the Guarantor is also obligated to pay all amounts due and owing under the Loan Agreements. *Id.* at 6, ¶ 22.

The Complaint alleges that the amount due and owing under the Loan Agreements, not including attorneys' fees and expenses or costs of collection, is not less

than $773,077.59 as of November 24, 2017. *Id.*, ¶ 23.
BMO notified Defendants of their defaults, demanded
payment under the Loan and Guaranty Agreements, and
demanded possession of the Collateral by letters dated
November 29, 2017. *Id.*, ¶ 24; ECF No. 1-6. The
Complaint alleges that Defendants have failed and
refused to surrender possession of the Collateral to
BMO. *Id.*, ¶ 27.

The Complaint asserts that "[BMO] has the right to,
with or without demand or notice, enter any premises
where the Collateral may be and take possession of and
remove the Collateral from the premises." *Id.* at 7,
¶ 28. The Complaint alleges "[t]he [Loan] Agreement[s]
expressly provide[] that [BMO] and Borrower
unconditionally waive their respective rights to a jury
trial of any claim or cause of action relating" to the
Loan Agreements. *Id.*, ¶ 29. The Complaint contends
that "[BMO] and its predecessors-in interest have
performed any and all conditions and obligations
required of them under the [Loan] Agreement[s]." *Id.*, ¶
30.

The Complaint alleges five claims.  First, the Complaint asserts a claim for injunctive relief.  BMO requests that the Court:  (1) enjoin Defendants from continuing to use the Collateral; (2) order Defendants to advise BMO of the Collateral's location; (3) order that Defendants be temporarily, preliminarily, and permanently enjoined from restricting access of BMO to the Collateral; (4) order Defendants to surrender the Collateral to BMO; (5) award a judgment against Borrower for any damages sustained by BMO; (6) award BMO its costs, attorneys' fees, and interest on all unpaid amounts due and owing; and (7) order such other and further relief as shall be just and equitable.  *Id.* at 8-9, ¶ 37.

Second, the Complaint asserts a claim for specific performance against Defendants.  BMO requests that the Court:  (1) enter judgment "in [BMO's] favor and against Borrower directing Borrower to specifically perform their respective obligations under the [Loan and Guaranty] Agreements, and to return and allow the removal of the Collateral;" (2) award BMO "judgment

7

against Borrower for any damages sustained by [BMO]";
(3) award BMO "its costs, attorneys' fees, and interest
on all unpaid amounts due and owing"; and (4) grant BMO
"such other and further relief as shall be just and
equitable." *Id*. at 9-10, ¶ 43.

Third, the Complaint alleges a replevin/writ of
possession claim against Defendants pursuant to Rule 64
of the Federal Rules of Civil Procedure and Haw. Rev.
Stat. § 654-1. *Id*. at 10, ¶ 45. BMO requests that the
Court: (1) issue an "order granting the issuance of
writs of possession . . . in favor of [BMO] granting
[BMO] possession of the Collateral"; (2) award BMO "a
judgment against Borrower for the value of the
Collateral if not delivered"; (3) award BMO "a judgment
against Borrower for damages for detention"; (4) award
BMO "its costs, attorneys' fees, and interest on all
unpaid amounts due and owing"; and (5) grant BMO "such
other and further relief as shall be just and
equitable." *Id*. at 12, ¶ 53.

Fourth, the Complaint alleges a breach of contract
claim against Borrower, requesting that the Court enter

judgment in BMO's "favor and against Borrower in the amount due under the Agreements, the exact amount to be proven at or before trial, plus [BMO's] attorneys' fees, costs, and interest, together with such other and further relief as shall be just and equitable." *Id*. at 13, ¶ 58.

Finally, the Complaint alleges a breach of contract claim against Guarantor, requesting judgment in BMO's "favor and against Guarantor in the amount due under the [Loan] Agreement[s] and the Guaranty [Agreements], the exact amount to be proven at or before trial, plus [BMO's] attorneys' fees, costs, and interest, together with such other and further relief as shall be just and equitable." *Id*. at 14, ¶ 63.

The Clerk of Court entered default against Defendants on April 12, 2018. *See* ECF No. 19. BMO filed the instant Motion on May 11, 2018, seeking judgment in favor of Plaintiff and against Defendants. The Motion contends that as of May 1, 2018, the judgment amount is $832,417.22 with $375.57 in interest accruing per day after May 1, 2018. ECF No. 21-1 at 3.

At the June 21, 2018 hearing, BMO orally withdrew its Motion for Default Judgment as to the first three counts in the Complaint—Injunctive Relief, Specific Performance, and Replevin.  Accordingly, BMO seeks default judgment only as to the breach of contract claim against the Borrower and the breach of contract claim against Guarantor.

DISCUSSION

"Default judgment may be entered for the plaintiff if the defendant has defaulted by failing to appear and the plaintiff's claim is for a 'sum certain or for a sum which can by computation be made certain[.]'"  *Haw. Electricians Pension Fund v. S.E. Elec. Serv., Inc.*, CIVIL NO. 16-00587 DKW-RLP, 2017 WL 2703774, at *1 (D. Haw. June 2, 2017), *adopted sub nom. Haw. Electricians Pension Fund by Yee v. S.E. Elec. Serv., Inc.*, 2017 WL 2695285 (D. Haw. June 22, 2017) (brackets in 2017 WL 2703774) (quoting Fed. R. Civ. P. 55(b)(1),(2)).  "The granting or denial of a motion for default judgment is within the discretion of the court."  *Id*. (citing *Haw. Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 511-12

10

(9th Cir. 1986).  "Entry of default does not entitle the non-defaulting party to a default judgment as a matter of right." *Id.* (citing *Valley Oak Credit Union v. Villegas*, 132 B.R. 742, 746 (9th Cir. 1991)). "Default judgments are ordinarily disfavored, and cases should be decided on their merits if reasonably possible." *Id*. (citing *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)).

The court considers the following seven factors in deciding whether to grant a motion for default judgment:

(1) the possibility of prejudice to the plaintiff;

(2) the merits of plaintiff's substantive claim;

(3) the sufficiency of the complaint;

(4) the sum of money at stake in the action;

(5) the possibility of a dispute concerning material facts;

(6) whether the default was due to excusable neglect; and

(7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

(collectively, "*Eitel* Factors"). *Eitel*, 782 F.2d at 1471-72.

In addition, on default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). That is, "[t]he allegations in the complaint regarding liability are deemed true, but the plaintiff must establish the relief to which [plaintiff] is entitled." *Haw. Electricians Pension Fund*, 2017 WL 2703774, at *2 (citing *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002)). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (other citations omitted) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)). Accordingly, the party requesting default must plead sufficient facts and

allege legally sufficient claims in the complaint to establish entitlement to default judgment.

A.  Jurisdiction

"To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, *i.e.*, the jurisdiction, to enter the judgment in the first place." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Accordingly, this Court has an affirmative obligation to determine whether it has subject matter jurisdiction over this action and personal jurisdiction over Defendants.

First, the Court has subject matter jurisdiction over BMO's claims because, pursuant to the Complaint, BMO is a national banking association with its main office located in Chicago, Illinois, and Defendants are citizens of the State of Hawai'i. *See* ECF No. 1 at 1-2, ¶¶ 1-3.  In addition, the Complaint asserts that the amount in controversy exceeds the sum of $75,000 exclusive of interests and costs. *Id*. at 2, ¶ 5. Accordingly, the Court has subject matter jurisdiction

pursuant to 28 U.S.C. § 1332(a).  *See* 28 U.S.C. § 1332(a) (providing original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states).

Second, the Court has personal jurisdiction over Defendants.  Personal jurisdiction can be acquired by personal service or by a defendant's "minimum contacts" with the jurisdiction.  *Cripps*, 980 F.2d at 1267 (citing *Burnham v. Superior Court of Cal.*, 495 U.S. 604 (1990)).  Here, BMO asserts that BMO served Defendants the Complaint on December 21, 2017.  ECF No. 21-1 at 1; *see also* ECF Nos. 9, 10 (Executed Summons by Borrower through its designated agent on December 21, 2017, and Executed Summons by Guarantor on December 21, 2017).  This service is sufficient under 29 U.S.C. § 1132(e)(2) to establish jurisdiction over both Borrower and Guarantor.

Accordingly, the Court has subject matter jurisdiction over this action and personal jurisdiction over Defendants, and thus, may recommend that the

district court enter default judgment in this action if
appropriate under the *Eitel* Factors.

B.   *Eitel* Factors

    1.   The Possibility of Prejudice to BMO

    The first factor considers whether BMO would suffer
prejudice if default judgment is not entered.   *See*
*PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172,
1177 (C.D. Cal. 2002).   Absent entry of default
judgment in this case, BMO would be without recourse
for recovery.   Accordingly, the first *Eitel* factor
favors the entry of default judgment.

    2.   The Merits of BMO's Substantive Claims and the
       Sufficiency of the Complaint

    As explained above, the factual allegations in the
complaint are taken as true for purposes of liability
on default.   *See TeleVideo Sys., Inc.*, 826 F.2d at 917-
18; *Fair Hous. of Marin*, 285 F.3d at 906.   Pursuant to
BMO's counsel's representations at the June 21, 2018
hearing on the Motion, BMO acknowledged that it had
recovered the Collateral and as a result, withdrew its
Motion as to Counts I, II, and III—Injunctive Relief,

15

Specific Performance and Replevin/Writ of Possession. Accordingly, the only remaining claims BMO seeks default judgment for are its breach of contract claim against Borrower and its breach of contract claim against Guarantor.

A party must prove the following elements to prevail on a claim for breach of contract in Hawai'i: "'(1) the contract at issue; (2) the parties to the contract; (3) whether Plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by Defendants; and (5) when and how Defendants allegedly breached the contract.'" *Keahole Point Fish LLC v. Skretting Can. Inc.*, 971 F. Supp. 2d 1017, 1040 (D. Haw. 2013) (quoting *Evergreen Eng'g, Inc. v. Green Energy Team LLC*, 884 F. Supp. 2d 1049, 1059–60 (D. Haw. 2012)).

First, regarding Borrower, as proof of the contract between BMO and Borrower, BMO offered two pieces of evidence: (1) the April 22, 2016 Agreement executed by and between BMO and Borrower; and (2) the May 9, 2016 Agreement executed by and between BMO and Borrower.

Pursuant to the April 22, 2016 Agreement, BMO loaned Borrower $667,671.38 to pay Hawaii Truck Parts Sales and Services LLC. ECF No. 1-2 at 2. Borrower agreed to pay BMO a total amount of $847,890.96 beginning on June 1, 2016, in 84 monthly installments of $10,093.94. *Id*. Pursuant to the May 9, 2016 Agreement, BMO loaned Borrower $222,557.13 to pay Hawaii Truck Parts Sale and Services LLC. *See* ECF No. 1-3 at 2. Borrower agreed to pay BMO a total amount of $282,221.52 beginning on June 9, 2016, in 84 monthly installments of $3,359.78. *Id*.

BMO alleges that Borrower failed to make the October 1, 2017 payment under the April 22, 2018 Agreement and the November 9, 2017 payment under the May 9, 2016 Agreement. ECF No. 1 at 5 ¶ 15; *see also* ECF No. 1-6 at 2. The Court finds that BMO's allegations, taken as true, are sufficient to establish a breach of contract claim against Borrower related to the failure to pay the amounts due under the Agreements.

17

Second, regarding Guarantor, as proof of the contract between BMO and Guarantor, BMO offered two pieces of evidence:  (1) a Continuing Guaranty Agreement executed by Guarantor on April 22, 2016; and (2) a Continuing Guaranty Agreement executed by Guarantor on May 9, 2016.  ECF No. 1-5 at 2-3. Guarantor agreed in the Guaranty Agreements to unconditionally guarantee to BMO that Borrower shall promptly and full perform, pay and discharge its liabilities, obligations, and indebtedness to BMO.  *Id*. Guarantor also agreed to pay on demand in the Guaranty Agreements "the entire indebtedness and all losses, costs, attorneys' fees and expenses which may be suffered by" BMO by reason of Borrower's default or default of Guarantor.  *Id*.

BMO notified Guarantor of Borrower's default under the Loan Agreements by letter dated November 29, 2017. *See* ECF No. 1-6 at 6.  The Complaint alleges that Guarantor is in default under the Guaranty Agreements for his failure to pay the amounts due under the Loan Agreements when such amounts became due.  ECF No. 1 at

18

5, ¶ 16.  The Court finds that BMO's allegations, taken as true, are sufficient to establish that BMO is entitled to judgment against Guarantor for breach of the Guaranty Contracts, for failure to pay the amounts due under the Loan Agreements.

Accordingly, the Court finds that BMO's breach of contract claims against Borrower and Guarantor are meritorious.  In addition, the Court finds that BMO's breach of contract claims against Defendants are sufficiently pled in the Complaint and supported by the documents filed with the Complaint.  This factor thus weighs in favor of default judgment as to the breach of contract claim against the Borrower and breach of contract claim against the Guarantor.

4.  The Sum of Money at Stake in the Action

The Court "must consider the amount of money at stake in relation to the seriousness of [Defendants'] conduct."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176.  BMO seeks $751,134.56 for the principal amount owed ($565,285.30 under the April 22, 2018 Agreement and $185,849.26 under the May 9, 2018 Agreement),

$75,996.20 in interest ($59,920.24 under the April 22, 2018 Agreement and $16,075.96 under the May 9, 2018 Agreement), and $5,286.46 in late fees ($4,950.48 under the April 22, 2018 Agreement and $335.98 under the May 9, 2018 Agreement), for a total of $832,417.22 in damages. ECF No. 21-2 at 10. The Court finds that BMO's damages request is tailored to Defendants' specific wrongful conduct in failing to pay the amounts due under the Loan Agreements and Guaranty Agreements. The Court thus finds that this factor weighs in favor default judgment for BMO's breach of contract claims against Defendants.

5.  The Possibility of a Dispute Concerning Material Facts

As discussed above, the well-pled factual allegations of the complaint, except those relating to the amount of damages, will be taken as true on default. *TeleVideo Sys., Inc*., 826 F.2d at 917-18. Defendants have been given a fair amount of time to answer the Complaint and deny the allegations therein; Defendants have not done so. Because no dispute has

been raised regarding BMO's material factual
allegations, the Court finds that this factor favors
default judgment.

     6.   Whether the Default Was Due to Excusable
          Neglect

     The Court finds that Defendants' default was not
the result of excusable neglect.  BMO served Defendants
on December 21, 2017. ECF Nos. 9, 10.  Defendants did
not file a response to BMO's Complaint.  In addition,
BMO served Defendants with notice of this Motion, and
this Court served Defendants notice of the hearing on
the Motion on May 16, 2018.  ECF No. 22.  Despite ample
notice of this lawsuit and BMO's intention to seek a
default judgment, Defendants have not appeared in this
matter to date.  The record suggests that Defendants'
default was not the result of any excusable neglect,
but rather due to Defendants' conscious and willful
decision not to defend this action.  Consequently, this
factor favors default judgment.

     7.   The Strong Policy Underlying the Federal Rules
          of Civil Procedure Favoring Decisions on the
          Merits

Defendants' failure to answer BMO's Complaint makes a decision on the merits impractical, if not impossible.  Under Rule 55, "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action."  *PepsiCo., Inc.*, 238 F. Supp. 2d at 1177; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003) ("[T]he mere existence of Fed. R. Civ. P. 55(b) indicates that the seventh *Eitel* factor is not alone dispositive." (citation omitted)).  Here, Defendants have failed to defend this action and have consequently rendered adjudication on the merits before this Court impracticable.  Accordingly, although the Federal Rules of Civil Procedure favor decisions on the merits, this factor does not preclude the Court from entering default judgment against Defendants.

8.  Totality of Eitel Factors

The Court finds that the totality of the factors weighs in favor of entering default judgment in BMO's favor and against Defendants as to BMO's breach of contract claims.

C.  Damages

BMO requests $832,417.22 in money damages caused by Defendants' breach of the Loan Agreements and Guaranty Agreements.  ECF No. 21 at 2.  In addition, BMO requests $8,009.43 in attorneys' fees and expenses. *Id.*

1.  Money Damages

BMO asserts that as of May 1, 2018, the amount due and owing under the Agreements is $832,417.22, not including attorneys' fees and expenses or costs of collection.  *See* ECF No. 21-1 at 3.  Specifically, the $832,417.22 amount consists of:  (1) $751,134.56, the aggregate principal amount due under both Loan Agreements ($565,285.30 under the April 22, 2016 Agreement and $185,849.26 under the May 9, 2016 Agreement); (2) $75,996.20, the interest due under both Loan Agreements ($59,920.24 under the April 22, 2016 Agreement and $16,075.96 under the May 9, 2016 Agreement) based on a per annum interest rate of eighteen percent (18%), which amounts to an interest rate of $375.57 per day ($282.64 under the April 22,

23

2016 Agreement and $92.92 under the May 9, 2016

Agreement); and (3) $5,286.46, the late fees prescribed

in the Loan Agreements ($4,950.48 under the April 22,

2016 Agreement and $335.98 under the May 9, 2016

Agreement). *See* ECF No. 21-2 at 10 (detailing the

categories of the amounts requested in the Motion).

Based on BMO's documentation, the terms of the Loan

Agreements, the terms of the Guaranty Agreements, and

the cause of action in this case, the Court finds that

BMO has established damages in the amount of

$832,417.22, with interest accruing on the principal

amount due at the interest rate of $375.57 per day

after May 1, 2018.  The Court thus recommends that the

district court GRANT BMO default judgment as to its

breach of contract claims against Defendants in the

total amount of $832,417.22, with interest accruing on

the principal amount due at the interest rate of

$375.57 per day after May 1, 2018.

2.  BMO's Possession of the Collateral

BMO represents that before the filing of the

Motion, BMO recovered possession of the Collateral and

24

is in the process of determining how best to mitigate
its damages. *See* ECF No. 21-1 at 4. BMO contends
that, as a secured creditor, BMO may enforce any debt
by simultaneously proceeding for judgment and
exercising its rights with respect to the Collateral.
*Id*. BMO thus argues that its rights are cumulative.
*Id*. The Court agrees.

Pursuant to Hawaii Revised Statutes section 490:9-
601(a)(1), after default, a secured party "[m]ay reduce
a claim to judgment, foreclose, or otherwise enforce
the claim, security interest, or agricultural lien by
any available judicial procedure[.]" In addition, a
secured party in possession or control of collateral
has the right to use or operate the collateral: "(A)
For the purpose of preserving the collateral or its
value; (B) As permitted by an order of a court having
competent jurisdiction; or (C) Except in the case of
consumer goods, in the manner and to the extent agreed
by the debtor." HRS § 490:9-207(b)(4); *see also* HRS §
490:9-601(b). The rights under subsections 490:9-

601(a) and (b) are "cumulative and may be exercised simultaneously." *Id.* § 490:9-601(c).

Notwithstanding the secured party's rights pursuant to Hawaii Revised Statutes section 490:9-601 and section 490:9-207, the Court reminds BMO that it may not hold as additional security any money received from the Collateral as additional security. *Id.* § 490:9-207(c)(1). BMO has an obligation to apply money or funds received from the Collateral to reduce the secured obligation, unless the money or funds are remitted to Defendants. *Id.* § 490:9-207(c)(2). BMO must keep the Collateral "identifiable," and may use or operate the collateral in the manner and to the extent agreed by Defendants under the applicable agreements, or for the purpose of (1) preserving the Collateral or its value, or (2) reducing Defendants' obligation under the applicable agreements. *Id.* § 490:9-207(b)-(c).

3.  Attorneys' Fees and Expenses

BMO requests $6,177.00 in attorneys' fees for its national counsel, Husch Blackwell LLP, and $1,327.50 in attorneys' fees and $504.93 in costs for the work

26

performed by Christopher Muzzi, Esq. *See* ECF No. 21-3 at 2. The Court finds that BMO is not entitled to fees for its national counsel because its national counsel failed to apply to appear and participate in this action as required by the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules").

Pursuant to Local Rule 83.1(e), "[a]n attorney who is an active member in good standing in a bar of the highest court of any State or territory of the United States . . . may, upon written application and in the discretion of this court, be permitted to appear and participate in a particular case subject to the conditions" of Local Rule 83. Local Rule 83 requires attorneys who are not active members of the bar in Hawaiʻi to submit a pro hac vice application and applicable fee to the clerk of this Court, and state the information specified in Local Rule 83.1(e) under penalty of perjury. BMO requests fees for individuals who are not members of Hawaii's bar, and who failed to apply for pro hac vice status in this Court. *See* HRS

§ 605-14 (providing that it is unlawful for any person, firm, association, or corporation to engage in . . . the practice of law, . . . except and to the extent that the person, firm, or association is licensed or authorized so to do by an appropriate court, agency, or office or by a statute of the State or the United States[.]).

More importantly, however, this Court did not permit BMO's national counsel to appear or participate in this action.  Nonetheless, BMO's national counsel drafted the Complaint, drafted the Motion, and drafted the declaration of local counsel in support of BMO's Motion.  This Court did not authorize such participation in this action.  This case is thus, distinguishable from *Fought & Co. v. Steel Engineering & Erection* ("*Fought*"), 87 Haw. 37, 48, 951 P.2d 487, 498 (1998).

In *Fought*, the Hawaiʻi Supreme Court found that plaintiff's out-of-state counsel was located in Oregon, "did not draft or sign any of the papers filed during the appeal, did not appear in court, and did not

28

communicate with counsel for other parties on [plaintiff's] behalf." *Fought*, 87 Haw. at 48, 951 P.2d at 498.  The Hawai'i Supreme Court also found that the role of plaintiff's out-of-state counsel was "strictly" one of consultant to the plaintiff and the plaintiff's Hawai'i counsel.  *Id*.  The Hawai'i Supreme Court stated:  "We are convinced that [the plaintiff's] Hawai'i counsel were at all times 'in charge' of [the plaintiff's] representation within the jurisdiction so as to insure that Hawai'i law was correctly interpreted and applied."  *Id*.  Such was not the case in this action.

The declarations submitted by Mr. Muzzi and out-of-state counsel, Mr. Aaron Chapin, demonstrate that Mr. Chapin was in charge of BMO's representation at all times.  Mr. Chapin, and not Mr. Muzzi, did a majority of the drafting of the papers filed in this Court.  *Compare* ECF No. 21-3 at 6-7, *with* ECF No. 21-4 at 4-9 (establishing that Mr. Chapin expended the majority of the hours performed in this case).  Mr. Chapin even drafted Mr. Muzzi's declaration on this Motion.  *See*

ECF No. 21-3 at 7 ("Draft the declaration of local counsel in support of BMO Harris' motion for default judgment."). Accordingly, unlike the local counsel's role in *Fought*, who was at all times in charge of the plaintiff's representation, Mr. Muzzi's role was one of consultant to BMO's national counsel.

The Court finds the participation of BMO's national counsel in this case troubling and a violation of this district's Local Rules. The Court finds that awarding BMO's national counsel its attorneys' fees in this action is not appropriate notwithstanding BMO's entitlement to attorneys' fees and costs pursuant to the applicable agreements in this action. The Court recommends that the district court DENY BMO the $6,177.00 in attorneys' fees requested for the work performed in this action by its national counsel.

Regarding the attorneys' fees and costs BMO requests for Mr. Muzzi, BMO requests a total of $1,832.43, which Mr. Muzzi represents consists of $1,327.50 in attorneys' fees for work performed by Mr. Muzzi, and $504.93 in costs for filing fees, copying

fees, online research fees and postage. *See* ECF No. 21-3 at 2; ECF No. 21-4 at 2. According to the Court's calculations, however, this total is inaccurate.

Mr. Muzzi's December 31, 2017 Invoice bills BMO for 1.4 hours of legal work at a rate of $295.00 per hour. This amounts to $413.00, not the $324.50 listed on the invoice. *See* ECF No. 21-4 at 4. Even if this Court were to consider the $413.00 amount instead of the $324.50 amount, the total would still equal only $1,771.42 ($1,266.49 in fees and $504.93 in costs), not the $1,832.43 requested by Mr. Muzzi. *See id*. at 2. Because the Court can only award fees based on the invoices, however, the Court uses the $324.50 amount listed on the December 31, 2017 invoice to arrive at its total of $1,173.82[1] for fees ($1,121.00 for fees and $52.82 for GET). *See* ECF No. 21-4 at 45.

In addition, the Court calculates the costs in this action to total $442.38[2] ($422.47 in costs and $19.91 in GET). The Court is unable to discern how Mr. Muzzi

---

[1]  324.50 + 354.00 + 442.50 = $1,121.00. *See* ECF No. 21-4 at 4, 6, 8.

[2]  $422.00 + $0.47 = $442.38. *See id.* at 4, 8.

arrived at the $504.93 amount Mr. Muzzi requests for costs.  Accordingly, based on BMO's submissions, this Court finds that Mr. Muzzi's fees and costs request actually totals $1,616.20.

Mr. Muzzi has been practicing law in Hawai'i since 1997, is a partner at his law firm, and charged an hourly rate of $295.00.  The Court finds this hourly rate manifestly reasonable.  Mr. Muzzi expended a total of 4.1 hours total in this action.  This Court finds the number of hours and the work performed by Mr. Muzzi in this action to be reasonable.  The Court thus recommends that the district court award BMO $1,173.82 in attorneys' fees for the work performed by Mr. Muzzi in this case, and a total of $442.38 for costs.

CONCLUSION

Based on the foregoing, the Court recommends that the district court GRANT BMO its Motion for Default as to its Breach of Contract claim against A & M Trucking, Inc., and its Breach of Contract claim against Mark D. Kuhn.  In addition, the Court recommends that the district court GRANT BMO its request for attorneys'

fees and costs for Christopher Muzzi, Esq. in the amount of $1,616.20 ($1,173.82 in attorneys' fees and $442.38 in costs).

The Court recommends, however, that the district court DENY BMO its request for attorneys' fees and costs for the work performed by its national counsel, Husch Blackwell LLP.

IT IS SO FOUND AND RECOMMENDED.

DATED: Honolulu, Hawai'i, July 25, 2018.



/S/ Kenneth J. Mansfield
Kenneth J. Mansfield
United States Magistrate Judge

CIVIL NO. 17-00598 HG-KJM; *BMO HARRIS BANK N.A. v. A & M TRUCKING, INC.*, and MARK D. KUHN; FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART MOTION FOR DEFAULT JUDGMENT